UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ZALMEN TEITELBAUM and SAM GROSS,

                                  Plaintiffs,

              -against-

YOSEF BREZEL GREEN FUND OF MANHATTAN
LLC, TAILORED FUND CAP LLC, DOE COMPANIES
1-5, ROE COMPANIES 1-5 and JOHN DOES 1-10,

                               Defendants.
------------------------------------------------------------------------X

____ CV _____

**VERIFIED
COMPLAINT**

       Plaintiffs ZALMEN TEITELBAUM and SAM GROSS (collectively, the Plaintiffs"), by their undersigned attorneys herein, MCSHAPIRO LAW GROUP PC, as and for their Verified Complaint against defendants YOSEF BREZEL, GREEN FUND OF MANHATTAN LLC, TAILORED FUND CAP LLC, DOE COMPANIES 1-5, ROE COMPANIES 1-5 and JOHN DOES 1-10 (collectively, the "Defendants"), allege as follows:

## <u>NATURE OF ACTION</u>

       1.     Plaintiffs and Defendants are, and have been for many years, in the business of providing funding to merchants that require a quick capital infusion of capital to help their cash flow, pay employees, purchase inventory, or meet other financial needs -- often where traditional banks are unable or unwilling to extend credit to these merchants -- in the form of a "merchant cash advance transaction" or an "MCA transaction". Like a conventional factoring agreement, in an MCA transaction a funding company purchases a merchant's future receipts for an agreed upon up-front purchase price and recovers its purchased future receipts from the merchant's weekly credit card receivables or deposits of receipts, typically through automated clearing house ("ACH") withdrawals from the merchant's bank account that are initially set to approximate the

*T&G v Brezel/GreenFund Complaint 02282023vf*

purchased percentage of the merchant's monthly receipts. The merchant has the right to reconcile the initial debit amounts with the actual percentage of receipts to which the funding company is entitled in the event that the merchant suffers a downturn in business. Under such circumstances, the MCA funder may have to wait a much longer period of time than expected to receive the amount of receivables that it purchased (often referred to as the "RTR") and, if the merchant goes out of business may never receive the full amount of the future receipts that it purchased. Unlike a loan, where the lender has absolute recourse against the business for non-payment, the funding company has no recourse against the merchant if the business fails and the merchant no longer has future receivables. Thus, the funding company thus bears the risk of loss in the MCA transaction.

2.      Plaintiffs (who are former residents of Brooklyn, New York who currently reside in the State of Florida) and certain of the Defendants (all of whom work and reside in Brooklyn, New York) were partners in a joint venture under which Plaintiffs sourced, originated and signed merchants ("Plaintiffs' Merchants") to contracts for MCA transactions to be administered and partially funded by the Defendants, with the balance of the funding to be provided by Plaintiffs (the "MCA Transactions"). Defendants have breached their agreement with Plaintiffs by failing and refusing to pay Plaintiffs their proper share of the receivables or RTR and approved origination fees collected by Defendants for these MCA Transactions, including subsequent fundings of those merchants (the "Subsequent MCA Transactions"), and by charging fees and collecting funds from Plaintiffs' Merchants without Plaintiffs' Merchants' approval or authorization, in violation of the agreements with the merchants regarding the MCA Transactions (the "Merchant Agreements").

3.      Plaintiffs seek monetary damages in the amount of the Plaintiffs' proper share of the RTR funds and other approved origination fees that were collected by Defendants on

2

the MCA Transactions and the Subsequent MCA Transactions, which amount Plaintiffs believe easily exceeds $600,000.00 and is likely in excess of $1,000,000. Plaintiffs seek both compensatory and punitive damages for Defendants' fraudulent acts of providing inaccurate books and records regarding the MCA Transactions to Plaintiffs and for intentionally withholding material information regarding Defendants' operations and practices, which fraudulent representations Plaintiffs detrimentally replied upon in continuing to sign merchants to be administered by Defendants and to participate in MCA Transactions with Defendants. Plaintiffs also seek damages for the Defendants' unfair competition for, and interference with their business relations with, the Plaintiffs' Merchants -- merchants that Plaintiffs sourced, originated and referred to Defendants for the MCA Transactions -- and based on Defendants use of confidential information provided to Defendants to unfairly compete with Plaintiffs. Part of that interference is based on Defendants' improper collecting of unauthorized fees from these merchants and engaging in additional practices employed by bad actors within the MCA space that have given the MCA industry an unsavory reputation and emboldened many merchants to default on their contractual obligations to MCA funders. Plaintiffs also seek damages for the Defendants' interference with a pre-existing agreement between Plaintiffs and Plaintiffs' main source of funding.

4.      Plaintiffs' claims – a number of which are pleaded in the alternative -- include breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment, unfair competition, breach of fiduciary duty (and aiding and abetting), accounting, tortious interference with contract and business relations, fraud, aiding and abetting fraud, and racketeering (RICO enterprise) predicated on wire fraud. Plaintiffs seek monetary damages in an amount to be determined at trial but believe to exceed $600,000 (and likely more than $1,000,000) and punitive damages exceeding $5,000,000, and injunctive relief to

restrain Defendants' continuing unlawful conduct. This Court has jurisdiction over this dispute based on diversity of citizenship (and based on the federal RICO claim and ancillary jurisdiction over related common law claims).

## PARTIES

5.      Plaintiff Zalmen Teitelbaum (also known as "Sol Teitel") (hereinafter, "Teitel") is, and has been since November of 2020, an individual residing in and a citizen of the State of Florida, in the County of Dade.

6.      Plaintiff Sam Gross (hereinafter, "Gross") is, and has been since November of 2020, an individual residing in and a citizen of the State of Florida, in the County of Dade.

7.      Upon information and belief, at all relevant times, Defendant Yosef Brezel (hereinafter, "Brezel") was and is an individual residing at 1009 E.2nd St., Brooklyn, NY 11230, and regularly worked and maintained his place of employment at 1275 51st Street, Brooklyn New York (a large office building that also has an entrance at the address known as 1276 50th Street).

8.      Upon information and belief, at all relevant times, Defendant GREEN FUND OF MANHATTAN LLC (hereinafter, "Green Fund NY") was and is a limited liability company organized and existing under the laws of the State of New York with an office address of 1275 51st Street, Brooklyn New York (a large office building that also has an entrance at the address known as 1276 50th Street), and a mailing address of 461 Van Brunt Street, Brooklyn, NY.

9.      Upon information and belief, at all relevant times, Defendant TAILORED FUND CAP LLC (hereinafter, "Tailored Fund"), was and is a limited liability company organized

*T&G v Brezel/GreenFund Complaint 02282023vf*

and existing under the laws of the State of New York with an office address of 1275 51st Street, Brooklyn New York, and a mailing address of 461 Van Brunt Street, Brooklyn, NY.

10.     Upon information and belief, at all relevant times, Defendants DOE COMPANIES 1-5 were and are companies or corporations organized, incorporated and/or registered to do business in the State of New York, whose exact identities are currently unknown by Plaintiffs.

11.     Upon information and belief, at all relevant times, Defendants Green Fund NY, Tailored Fund, and DOE COMPANIES 1-5 (collectively, the "Green Fund Companies") were and are alter egos of one another, and of Defendant Brezel, as they each, upon information and belief, at all relevant times:

 a. operate(d) out of the same office address, 1275 51st Street, Brooklyn New York (which has a separate entrance at 1276 50th Street);

 b. utilize(ed) the same mailing address, 461 Van Brunt Street, Brooklyn, NY;

 c. share(d) the same office personnel;

 d. were ultimately owned and operated by Brezel, and for the personal benefit of Brezel;

 e. were and are under such an extensive control of Brezel that they do not have a separate mind, will or experience and each shares the same officers, employees and offices;

 f. operate(d) under the name "Green Fund";

*T&G v Brezel/GreenFund Complaint 02282023vf*

g.     commingle(d) their assets with one another, and use(d) funds of one to pay the expenses and obligations of the others, and upon information and belief, to pay Brezel and Brezel's expenses; and

h.     have abused the privilege of doing business in the corporate form by, inter alia, failing to observe corporate formalities and separateness.

12.     Upon information and belief, at all relevant times, Defendants ROE COMPANIES 1-5 were and are companies or corporations organized, incorporated and/or registered to do business in the State of New York, whose exact identities are currently unknown by Plaintiffs, and which either colluded or conspired in, or actively aided and abetted, the improper, illegal, unlawful and fraudulent actions of the Brezel Defendants described below, and received direct financial benefits from their participation int those acts.

13.     Defendants JOHN DOES 1-10 were and are individuals, whose exact identities are currently unknown by Plaintiffs, and which either colluded or conspired in, or actively aided and abetted, the improper, illegal, unlawful and fraudulent actions of the Brezel Defendants and the Green Fund Defendants described below, and personally benefited from those actions and received direct financial benefit from their participation in those acts.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction (a) pursuant to 28 U.S.C. § 1332 since there is complete diversity of jurisdiction between the parties, and (b) pursuant to 28 U.S.C. § 1331 with respect to the claim asserted under the federal RICO statute, and pursuant to 28 U.S.C. § 1367 with respect to the remaining claims that are related to the RICO claim.

*T&G v Brezel/GreenFund Complaint 02282023vf*

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred, and the personal property sought to be recovered that is the subject of the action is situated in this district.

16.     The Court has personal jurisdiction each and every one of the Defendants, as they are all residents and citizens of the State of New York who actively maintain business offices and/or mailing addresses in Brooklyn, New York, and actively conduct business in Brooklyn, New York, within this judicial district.

## FACTUAL ALLEGATIONS COMMONS TO ALL CLAIMS

17.     Defendant Brezel owned, managed, directed and/or controlled a number of companies, including Defendants Green Fund of Manhattan LLC, Tailored Fund Cap LLC and certain of the Doe Companies 1-5, many of which operated under some form of the "Green Fund" name (individually or collectively, the "Green Fund Companies") (collectively, with Brezel, the "Brezel Defendants"), that funded, administered and held the contracts for MCA transactions, including the Plaintiffs' MCA Transaction. The Brezel Defendants funded those MCA transactions using their own funds and funds contributed by others who were considered investors or syndicators in MCA transactions (hereinafter, "Syndicators"), including Plaintiffs.

18.     In a syndicated MCA transaction, the funder and the Syndicators typically receive fixed percentages of the RTR collected from the merchants, after certain agreed-upon fees are deducted (such as cost of collection or administrative fees that are retained by the funding company or paid out to vendors who perform those functions). Additionally, the funding company typically collects "Origination Fees" and administrative fees directly from the merchant, and those fees are retained by the funding company.

19.     The other participant in a typical MCA transaction is the one who originates the deal by identifying, sourcing, prequalifying and referring the merchant to the funding company, typically by submitting the merchant's application for an MCA to the funding company. This person or individual is typically referred to as a sales agent, broker or independent sales office ("ISO").  An ISO usually receives a percentage of the amount to be advanced to the merchant as a sales commission for that merchant's initial MCA Transaction and for all subsequent fundings of that merchant by the funder or its affiliates, often referred to in the industry as refinancings or "refis" (hereinafter, "Refis" or "Subsequent MCA transactions").

20.     In the relationship between the parties, Plaintiffs serviced as both syndicators and ISOs on most of the MCA Transactions in which they participated. Either on their own or through sub-ISOs with whom they established relationships, Plaintiffs located, identified, sourced and solicited merchants interested in selling future receivables in a merchant cash advance transaction ("Plaintiffs' Merchants").  Plaintiffs also provided 50% of the funding to be provided to Plaintiffs' Merchants.

21.     In or about September of 2019, Plaintiffs and Defendant Brezel entered into an agreement whereby (a) Plaintiffs could and would sign Plaintiffs' Merchants to merchant agreements for MCA Transactions using the name "Green Fund", and (b) the companies owned and operated by Defendant Brezel that were doing business under the name Green Fund, which Plaintiffs allege operated as interchangeable alter egos and one of another (e.g., the defendant "Green Fund Companies") would underwrite the MCA Transactions (with half of the underwriting cost paid for by Plaintiffs), process the paperwork and administer the MCA Transactions by, among other things, providing the Plaintiffs' Merchants their respective merchant cash advance

funds and then debiting the Plaintiffs' Merchants' bank accounts amounts approved under the merchant agreements for fees and purchased receivables to be collected (the "Brezel Agreement").

22.     Under the Brezel Agreement, Plaintiffs provided 50% of the funds to be advanced to the merchants that Plaintiffs identified, pre-qualified and referred to the Brezel Defendants (the "Plaintiffs' Merchants"). In exchange, Plaintiffs would receive 50% of the RTR on the MCA Transaction for the Plaintiffs' Merchants, including the Origination Fees that Plaintiffs and the merchants approved in advance (the "Approved Origination Fees").

23.     The one exception to the 50:50 split of the RTR under the Brezel Agreement was a $499 "Monthly Fee" that Defendant Brezel and the Brezel Defendants retained for themselves in providing the "back office" services and otherwise administering the MCA Transactions under the Green Fund NY name.

24.     The foregoing terms regarding the funding of MCA Transactions for Plaintiffs' Merchants constitutes the initial agreement" between the Plaintiffs and the Brezel Defendants (the "Brezel Agreement" or the "Agreement").

25.     The initial Agreement between the Plaintiffs and the Brezel Defendants continued from September 2019 through June 2021. Throughout that time period, Plaintiffs believed, based on representations made by Brezel, and the entries on the customer retention system (the "Green Fund CRM") and reports maintained and provided to Plaintiffs by the Brezel Defendants (the "Green Fund Reports"), that Brezel himself was running the Green Fund Companies and that the Brezel Defendants were fulfilling their obligations under the Agreement and under the agreements with the merchants who were parties to the MCA Transactions to only charge merchants Approved Origination Fees.

*T&G v Brezel/GreenFund Complaint 02282023vf*

26.     During that time period, Plaintiffs had funded five separate portfolios of MCA Transactions with the Brezel Defendants, each of which was referred to as a "portfolio" or "book" ("Books 1-5").

27.     During that time period September 2019 through June 2021, it appeared to Plaintiffs that the Brezel Defendants were complying with the Brezel Agreement and paying Plaintiffs their proper share of the RTR for the MCA Transactions on Books 1-5.

**Brezel Interference with the YW Agreement and Breach of Agreement for Book 6**

28.     A significant percentage of the funds that Plaintiffs had had been using to fund the MCA Transactions had been provided by an individual previously known to Plaintiffs, and companies under his ownership, management or control (hereinafter, "YW").

29.     Upon information and belief, Plaintiffs had introduced YW to the MCA business. YW had been initially reluctant to invest funds in this risky market, and Plaintiffs had worked hard to assure YW, based upon their prior experience in the MCA business, to partner with Plaintiffs and to provide funds to syndicate MCA Transactions.

30.     Plaintiffs and YW had a separate Agreement under which Plaintiffs would source, originate, pre-qualify, underwrite and sign the merchants, an in exchange for providing funds for the MCA Transactions as a Syndicator, YW and Plaintiffs would each receive a share of the RTR for those MCA Transactions (the "YW Agreement").

31.     Between January or February of 2020 and June 2021, the Brezel Defendants would pay the 50% of RTR due to Plaintiffs on the MCA Transactions by wiring or transferring 80% of the Plaintiffs' share of RTR to Plaintiffs and 20% to YW.

32.     Upon information and belief, at a point in time between January 2021 and June 2021, Brezel convinced YW to invest YW's funds as a direct syndicator with the Brezel Defendants, and not through Plaintiffs.

33.     Upon information and belief, the Brezel Defendants actively sought to hide from Plaintiffs the fact that YW had become a direct syndicator through the Brezel Defendants for Book 6.

34.     Upon information and belief, YW became the primary funding source for both sides on the Book 6 MCA Transactions, providing all of the capital for Plaintiffs' side and all of the capital for the Brezel Defendants' side.

35.     Upon information and belief, the Brezel Defendants actively sought to hide from Plaintiffs the fact that YW was funding the Brezel Defendants' side of the Book 6 MCA Transactions.

36.     After circumventing Plaintiffs and striking a direct deal with YW, Brezel then informed Plaintiffs that their share of RTR on the Plaintiffs' MCA Transactions (including Subsequent MCA Transactions) would be reduced to 40% of RTR, and that the remainder would be paid directly to YW by Defendants.

37.     Plaintiffs objected to Brezel's interference with the YW Agreement and to the proposed changes to the Brezel Agreement with Plaintiffs. Under protest, Plaintiffs permitted the Brezel Defendants and YW to fund Book 6, which included Subsequent MCA Transactions for certain merchants who had originally been funded as part of Books 1-5.

**Brezel Defendants' Materials Breaches of Agreement**

38.    In addition to Defendant Brezel's foregoing circumvention of and interference with Plaintiffs' contractual relationship with YW, and Defendant Brezel's breach of the Brezel Agreement, Brezel also materially breached the Brezel Agreement in a number of ways.

39.    First, Defendant Brezel defrauded Plaintiffs regarding the participation of Jonathan Braun ("Braun") in the business operations of the Green Fund Companies.

40.    Upon information and belief, Braun is the cousin of Defendant Brezel, and apparently introduced Defendant Brezel to the MCA industry sometime between 2016 and 2018.

41.    Braun is a notorious and infamous figure whose alleged misconduct as a participant in the MCA industry during the years that he was awaiting sentencing on felony drug distribution charges was highlighted by journalists and legislators alike in seeking reform of the laws and regulations governing MCA Transaction in 2018 and 2019. Braun and his entities are the subjects of numerous lawsuits and news articles alleging his wide-ranging fraudulent, predatory, and abusive practices in the MCA industry, including lawsuits brought by the New York State Attorney General and the Federal Trade Commission. (Three examples are Bethany McLean, *Merchant cash advances — salvation for small businesses or payday lending reincarnate?,* Yahoo Finance (Nov. 20, 2018), https://finance.yahoo.com/news/merchant-cash-advances-salvation-smallbusinesses-payday-lending-reincarnate-161835117.html, and Zachary R. Mider and Zeke Faux, *How an obscure legal document turned New York's court system into a debt-collection machine that's chewing up small businesses across America,* Bloomberg (Nov. 20, 2018), https://www.bloomberg.com/graphics/2018-confessions-of-judgment/ and Zeke Faux and Zachary R. Mider, *"Sign Here to Lose Everything, Part 4: Business-Loan Kingpin,"* Bloomberg, Dec. 3, 2018.

42.    Upon information and belief, Braun is a convicted felon who pled guilty to conspiracy to import marijuana and money laundering on November 3, 2011, and after being under house arrest for many years, was sentenced to a 10-year prison term on May 28, 2019.

43.    On or about January 2, 2020, after several delays, Braun finally surrendered to authorities and began serving his 10-year sentence.

44.    On or about January 20, 2021, Braun's 10-year sentence ended after only slightly more than one year when former President of the United States Donald J. Trump issued an executive grant of clemency to Braun and commuted his sentence.

45.    Plaintiffs were initially hesitant to do business with Defendant Brezel when they learned of his familial relationship to Braun.

46.    Defendant Brezel assured Plaintiffs that Braun played no role in the Green Fund Companies and that the Brezel Defendants and the Green Fund Companies did not engage in any of the improper and illegal practices that Braun and other MCA companies like Yellowstone Capital had been accused of engaging in, including charging and collecting from merchants fees unauthorized by the Merchant Agreement.

47.    Brezel's assurances provided false.

48.    In late April or early May of 2021, soon after Braun's release from prison in January of 2021, Defendant Brezel informed Plaintiffs that he and YW wanted to form a partnership that included Braun.

49.    Based on Braun's notoriety as a convicted felon, and concerns about the misdeeds with respect to MCA transactions that Braun and his companies have been accused of in lawsuits and the press for many years -- including the still-pending lawsuits brought by the New

York State Attorney General and the Federal Trade Commission regarding deceptive practices and other alleged misconduct -- Plaintiffs strenuously objected to doing business with Braun.

50.    It subsequently became clear to Plaintiffs that Braun was effectively in control of the Green Fund Companies' activities, and its bank accounts, by June of 2021.

51.    Plaintiff was not aware of Braun's involvement in the Green Fund Companies prior to June 2021, which is when the Book 6 portfolio of MCA Transactions was funded.

52.    Braun's involvement in the Green Fund Companies prior to June 2021 was in direct contradiction to the apparently false statements that Defendant Brezel knowingly made to Plaintiffs on behalf of the Green Fund Companies regarding Braun's involvement.

53.    At the same time, Defendant Brezel continued to make false statements that (a) the Green Fund Companies were in compliance with applicable laws and regulations regarding the funding and charging of Plaintiffs' Merchants, (b) that the Green Fund Companies were not in violation of the Merchant Agreements with respect to Plaintiffs' Merchants and the fees that the Green Fund Companies were charging Plaintiffs' Merchants and retaining for themselves, and (c) that the administrative fees and collection costs being charged against the RTR to be paid to Plaintiffs due to purportedly defaulted Plaintiffs' Merchants was being properly calculated and allocated to Plaintiffs' accounts, (d) that Plaintiffs were receiving their proper share of the RTR collected on Plaintiffs' Merchants' MCA Transactions, and (e) that Brezel and the Green Fund Companies were fulfilling their obligations under the Brezel Agreement.

54.    The false representations summarized in the foregoing two paragraphs are hereinafter referred to as "the Brezel Misrepresentations".

*T&G v Brezel/GreenFund Complaint 02282023vf*

55.     Plaintiffs relied upon the Brezel Misrepresentations (a) deciding to continue to refer merchants to the Green Fund Companies through June of 2021, (b) in participating in the Book 6 portfolio as Syndicators and partners, and (c) not funding those deals with another MCA funder to administer those deals, and (d) not setting themselves up as their own MCA funder and administrator prior to July of 2021.

56.     But for the Brezel Misrepresentations, Plaintiffs would not have (a) continued to refer merchants to the Green Fund Companies through June of 2021, (b) participated in the Book 6 portfolio as Syndicators and partners, and (c) funded the Book 6 Portfolio MCA Transactions with the Green Fund Companies instead of making arrangements with another MCA funder to administer those deals, and (d) delayed setting themselves up as their own MCA funder and administrator prior to July of 2021.

57.     Upon information and belief, Defendant Brezel knowingly and intentionally made the Brezel Misrepresentations in order to fraudulently induce Plaintiffs to (a) continue to refer merchants to the Green Fund Companies through June of 2021, (b) participate in the Book 6 portfolio as Syndicators and partners, (c) not fund those deals with another MCA funder to administer those deals, and (d) not set themselves up as their own MCA funder and administrator prior to July of 2021.

58.     Plaintiffs informed Defendant Brezel that they believed that some of Plaintiffs' Merchants were being charged fees that were not authorized by the Merchant Agreement, and that the Green Fund Companies were engaging in the bad practices that they feared would become the norm at the Green Fund Companies.

*T&G v Brezel/GreenFund Complaint 02282023vf*

59.     One glaring example is a merchant known as EFletcher Construction LLC, who complained about the amount of money that had been debited from the merchant's account, in violation of the terms of the Merchant Agreement and applicable law.

60.     As they had always done, Plaintiffs continued to advocate for Plaintiffs' Merchants with Defendants.

61.     At some point in June or early July of 2021, Plaintiffs became suspicious that the operations of the Green Fund Companies had changed and that Braun was actively involved in control of the Green Fund Companies activities.

62.     When confronted by Plaintiffs, Defendant Brezel and YW admitted that they had indeed partnered together on the Brezel Companies' side of the transactions and that Braun was also involved in the business.

63.     Plaintiffs confirmed to Defendant Brezel and YW that Plaintiffs were resolute in their refusal to do business with Braun or with any MCA funder that engaged in the practices that Braun and his companies had allegedly engaged, according to the press articles, complaints by merchants, and prosecutions by the FTC and the Office of the Attorney General of New York.

64.     Defendant Brezel again tried to reassure Plaintiffs with knowingly false misrepresentations that Defendant Brezel controlled the bank accounts and records for the Green Fund Companies and that Braun would have no control.

65.     During that same conversation in June or early July of 2021, Defendant Brezel further assured Plaintiffs that Braun would not even be able to see Plaintiffs' Merchants' MCA Transactions. (Plaintiffs were concerned that if Braun was aware of Plaintiffs' MCA Transactions for Plaintiffs' Merchants, that other MCA companies controlled by Braun would

*T&G v Brezel/GreenFund Complaint 02282023vf*

simultaneously fund Plaintiffs' Merchants' MCA Transactions, a practice in the industry known as "stacking" one MCA Transaction on top of another and increasing the merchants' daily obligations.)

66.     In late June and and early July of 2021, Plaintiffs saw email exchanges which indicated that Braun was actually heavily actively involved in the operations of the Green Fund Companies and in MCA Transactions for Plaintiffs' Merchants.

67.     Plaintiffs reiterated their objections to doing business with Braun or any companies in which Braun was actively involved.

68.     In July of 2021, Braun himself opened a WhatsApp chap group chat with each of the Plaintiffs and stated his and Brezel's and YW's disappointment that Plaintiffs had not relented, and that beginning immediately, Plaintiffs would be excluded from participating in any MCA Transactions with the Green Fund Companies in any capacity, including the Subsequent MCA Transactions for Plaintiffs' Merchants that the Green Fund Companies have continued to fund.

69.     Defendant Brezel reassured and informed Plaintiffs that there were no hard feelings and assured Plaintiffs that they would be paid their proper share of the RTR on all previously funded MCA Transactions in which they had participated. That appeared to continue until December 2021.

70.     In or about December 2021, the amounts that Plaintiffs were receiving on account of Book 6 MCA Transactions were much lower than anticipated.

71.     Plaintiffs' access to the Green Fund CRM system, and the sheets from the Green Fund Companies' MCA Suites and Google sheets programs that were used to track and report activities on Plaintiffs' account, was provided to them until February or March of 2022.

*T&G v Brezel/GreenFund Complaint 02282023vf*

72.     Prior to having their access to the Green Fund Companies' reporting cut off in the first quarter of 2022, Plaintiffs noticed a number of irregularities.

73.     An example of one irregularity that Plaintiffs discovered was a number of MCA Transactions in which RTR amounts previously received from or on behalf of Plaintiffs' Merchants had been reduced in the Green Fund CRM System, leading to improper reductions in the payouts to Plaintiffs.

74.     Plaintiff also discovered unreasonable fees being charged for collections on various accounts that were then offset against RTR due to be paid to Plaintiffs for those deals and for other MCA Transactions.

75.     Upon information and belief, the Brezel Defendants have padded and inflated the amounts of fees supposedly paid to collection lawyers and vendors for UCC filings and collection activities on Plaintiffs' MCA Transactions.

76.     Plaintiffs also learned that there were numerous MCA Transactions in which Plaintiffs had actively participated and with respect to which Defendants continued to collect receivables and fees and did not pay Plaintiffs their share of the RTR. Examples of such merchants are THE AAC SPEECH CLINIC 2, SRB ENTERPRISES LLC and PREMIER HEALTH.

77.     Plaintiffs also learned that Defendants have improperly interfered with and converted Plaintiffs' relationships with Plaintiffs' Merchants into direct relationships whereby Defendants provide additional cash advances to those merchants and do not pay any of the RTR or other compensation to Plaintiffs.

78.     Upon information and belief, there have been a number of Subsequent MCA Transactions for Plaintiffs' Merchants in which the Green Fund Companies have refinanced an

existing MCA Transaction, and thus paid off the balance of receivables then due to be collected as RTR on that pre-existing MCA Transaction, yet have not paid Plaintiffs their share of the RTR for the pre-existing MCA Transaction.

79.    When Plaintiffs complained about the irregularities and apparent shortfalls in the amount of RTR that they were to receive on MCA Transactions for Plaintiffs' Merchants that had been funded as part of Books 1-6, and the significant shortfalls that appeared in December of 2021, Defendant Brezel first assured Plaintiffs that the figures were correct.

80.    When pressed by Plaintiffs in December 2021, Defendant Brezel then said that he would need to check the bank records.

81.    When pressed further by Plaintiffs in December of 2021, Defendant Brezel then stated that it was Braun did not want to pay Plaintiffs anything for any MCA Transactions, and that presented a difficulty in Brezel and the Brezel Defendants getting Plaintiffs paid at all for any MCA Transactions.

82.    This last excuse by Brezel was directly contrary to the Brezel Misrepresentations about Braun's involvement or control.

83.    Brezel told Plaintiffs that Braun's refusal to allow the Brezel Defendants to pay Plaintiffs was that Plaintiffs had been "talking to the press about [Braun]". It was in or about December 2021 that another series of unflattering articles appeared in the press about Braun, his prior felony criminal conviction and the ongoing prosecutions by the Federal Trade Commission and the New York Attorney General based on his alleged unlawful conduct in the MCA industry (which highlighted allegations regarding Braun's profanity-laced, violence-threatening collection tactics with merchants).

*T&G v Brezel/GreenFund Complaint 02282023vf*

84.     In or about February or March of 2022, Plaintiffs were completely cut off from the Green Fund CRM System and stopped receiving any reports from Defendants about Plaintiffs' accounts or the performance on MCA Transactions for Plaintiffs' Merchants.

85.     Defendants have failed and refused to make any payments to Plaintiffs since April of 2022, despite the fact that Defendants have continue to receive RTR and other payments from Plaintiffs' Merchants for MCA Transactions (including those funded as part of Books 1-5).

86.     Plaintiffs believe that a full accounting of the Defendants' banking statements would reveal that Defendants have falsified the information on the Green Fund CRM System with respect to Plaintiffs' Merchants and MCA Transactions, and have underpaid Plaintiffs by more than $600,000 on MCA Transactions.

87.     Plaintiffs believe that a full accounting of the Defendants' banking statements would reveal that Defendants have continued to provide subsequent merchant cash advances to Plaintiffs' Merchants (the "Subsequent MCA Transactions") without providing any compensation to Plaintiffs.

88.     Plaintiffs also believe that a full accounting of the Defendants' banking statements would reveal that Defendants have (a) been improperly charging many merchants the Monthly Fee after the RTR had been fully collected by Defendants on particular MCA Transactions, (b) improperly charging many merchants the Monthly Fee for more months than authorized under the merchant agreement for certain of Plaintiffs' Merchants, and (c) engaging in other deceptive practices and otherwise violating the terms of the Merchant Agreements and applicable law. These are the type of practices that Plaintiffs were always careful to avoid and were concerned that Defendants were planning to utilize once they learned of Defendant Brezel's plan to involve Braun in the operations of the Defendant companies.

89.     Upon information and belief, Defendants have engaged in those deceptive and illegal practices with respect to Plaintiffs' Merchants, using the same "Green Fund" trade name that Plaintiffs had used with Defendants' permission when doing business with those merchants, and this has caused further damage to Plaintiffs' relationships with those merchants A

90.     Defendants are unfairly competing with Defendants for the business of Plaintiffs' Merchants.

91. Defendants have failed and refused repeated requests for an accounting of the books and records of the Green Fund Companies to determine the amount that is due and owing to Plaintiffs for the Plaintiffs' Merchants' MCA Transactions.

92.     Defendants have taken the position that nothing is due and owing Plaintiffs for the Plaintiffs' Merchants' Subsequent MCA Transactions.

## FIRST CLAIM
**(Breach of Contract -- Against Brezel and Green Fund Companies)**

93.     Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, as if fully set forth herein.

94.     The Brezel Agreement is a valid and binding contract.

95.     Plaintiffs have at all times complied with their obligations under the Brezel Agreement and have performed and were willing and able to perform all of their obligations thereunder.

96.     Alternatively, any purported breaches of the Brezel Agreement by Plaintiffs post-dated the anticipated breach and actual breach of the Brezel Agreement by Defendant Brezel and the other Brezel Defendants.

97.     Defendant Brezel and the other Brezel Defendants were capable of performing their obligations under the Brezel Agreement, but instead breached the Brezel Agreement.

98.     The breaches by Defendant Brezel and the other Brezel Defendants included, among other things, their (a) failing and refusing to pay Plaintiffs the revenues due and owing to Plaintiffs for their share of the RTR on the MCA Transactions, (b) failing and refusing to pay Plaintiffs the revenues due and owing to Plaintiffs for their share of the RTR on the Subsequent MCA Transactions, (c) improperly assessing charges and fees against Plaintiffs' accounts that were not the actual, reasonable charges and fees expended on Plaintiffs' Merchants, and (d) terminating Plaintiffs' access to the Green Fund Companies' CRM systems and failing and refusing to provide reports on the Plaintiffs' MCA Transactions and the Subsequent MCA Transactions.

99.     Plaintiffs have been damaged by the foregoing breaches of the Brezel Agreement by Defendant Brezel and the other Brezel Defendants in an amount to be determined at trial but believed to exceed $600,000 (and likely more than $1,000,000).

100.    Based upon the foregoing, Plaintiffs are entitled to recover monetary damages, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs, from Defendant Brezel and the other Brezel Defendants in an amount to be determined at trial but believed to exceed $600,000 (and likely more than $1,000,000).

*T&G v Brezel/GreenFund Complaint 02282023vf*

## SECOND CLAIM
### (Breach of Covenant of Good Faith and Fair Dealing—
### Against Brezel and Green Fund Companies)

101.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, as if fully set forth herein.

102.    The Brezel Agreement is a valid and binding contract.

103.    As parties to the Brezel Agreement, Defendant Brezel and the other Brezel Defendants were obligated to comply with the implied covenant of good faith and fear dealing implicit in any contract.

104.    Plaintiffs have at all times complied with their obligations under the Brezel Agreement and have performed and were willing and able to perform all of their obligations thereunder.

105.    Alternatively, any purported breaches of the Brezel Agreement by Plaintiffs post-dated the anticipated breach and actual breach of the implied covenant of good faith and fair dealing by Defendant Brezel and the other Brezel Defendants.

106.    Defendant Brezel and the other Brezel Defendants were capable of performing their obligations under the Brezel Agreement, but instead breached the implied covenant of good faith and fair dealing.

107.    The breaches by Defendant Brezel and the other Brezel Defendants included, among other things, their (a) failing and refusing to pay Plaintiffs the revenues due and owing to Plaintiffs for their share of the RTR on the MCA Transactions, (b) failing and refusing to pay Plaintiffs the revenues due and owing to Plaintiffs for their share of the RTR on the Subsequent MCA Transactions, (c) improperly assessing charges and fees against Plaintiffs' accounts that were not the actual, reasonable charges and fees expended on Plaintiffs' Merchants,

and (d) terminating Plaintiffs' access to the Green Fund Companies' CRM systems and failing and refusing to provide reports on the Plaintiffs' MCA Transactions and the Subsequent MCA Transactions.

108.    Plaintiffs have been damaged by the foregoing breaches of the implied covenant of good faith and fair dealing by Defendant Brezel and the other Brezel Defendants in an amount to be determined at trial but believed to exceed $600,000 (and likely more than $1,000,000).

109.    Based upon the foregoing, Plaintiffs are entitled to recover monetary damages, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs, from Defendant Brezel and the other Brezel Defendants in an amount to be determined at trial but believed to exceed $600,000 (and likely more than $1,000,000).

## THIRD CLAIM
### (Conversion -- Against Brezel, Green Fund Companies and Doe Companies 1-5)

110.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, as if fully set forth herein.

111.    Defendant Brezel, the Green Fund Companies and certain of the Doe Companies 1-5 have, intentionally and without authority to do so, exercised unauthorized dominion over funds that rightfully belonged to Plaintiffs – including Plaintiffs' proper share of the RTR and Origination Fees from the MCA Transactions and the Subsequent MCA Transactions – and retained for themselves and others the possession of funds due and owing Plaintiffs.

112.    Defendant Brezel, the Green Fund Companies and certain of the Doe Companies 1-5 have, intentionally and without authority to do so, retained improper possession of

24

*T&G v Brezel/GreenFund Complaint 02282023vf*

the Merchant Agreements with Plaintiffs' Merchants and other records regarding Plaintiffs' Merchants and the Plaintiffs' Merchants' MCA Transactions and Subsequent MCA Transactions.

113.    Defendants' conversion of Plaintiffs' property was knowing and intentional.

114.    Plaintiffs have been damaged by the foregoing acts of conversion in the amount of the value of Plaintiffs' property, in an amount to be determined at trial but believed to exceed $600,000 (and likely more than $1,000,000).

115.    Based upon the foregoing, Plaintiffs are entitled to a return of Plaintiffs' property (or recovery of monetary damages from Defendants in the equivalent amount of the value of Plaintiffs' property, in an amount to be determined at trial but believed to exceed $600,000 -- and likely more than $1,000,000), together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs, from Defendant Brezel, the Defendant Green Fund Companies and certain of the Doe Companies 1-5.

116.    Based upon the foregoing, and the substantially likelihood that Defendants will continue to engage in the unlawful acts unless they are restrained by a court order from continuing to do so, and Plaintiffs will be irreparably harmed by such continuing unlawful conduct, Plaintiffs are entitled to injunctive relief, enjoining and restraining Defendant Brezel and his alter egos (including the Green Fund Companies), affiliates, successors or assigns, or anyone acting in concert with them, from continuing to convert to their own use Plaintiffs' funds and property.

## FOURTH CLAIM
**(Misappropriation of Business Opportunities and Revenues and Unjust Enrichment --
Against Brezel, Green Fund Companies and Doe Companies 1-5)**

117.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, as if fully set forth herein.

118.    Defendant Brezel, the Green Fund Companies and certain of the Doe Companies 1-5 misappropriated the funds and the Merchant Agreements that were delivered to them by Plaintiffs and were unjustly and improperly enriched at Plaintiffs' expense through Defendants actions described above.

119.    Defendant Brezel, the Green Fund Companies and certain of the Doe Companies 1-5 exercised unauthorized dominion over funds that rightfully belonged to Plaintiffs – including Plaintiffs' proper share of the RTR and Origination Fees from the MCA Transactions and the Subsequent MCA Transactions. – and retained for themselves and others the possession of funds due and owing Plaintiffs.

120.    Equity and good conscience warrant that that these Defendants be prohibited from retaining funds or property which were wrongfully obtained through the knowing interference with Plaintiffs' contractual and property rights.

121.    Defendants' misappropriation of Plaintiffs' funds and property was knowing and intentional.

122.    Plaintiffs have been damaged by the foregoing acts in the amount of the value of Plaintiffs' property, in an amount to be determined at trial but believed to exceed $600,000 (and likely more than $1,000,000).

123.    Based upon the foregoing, Plaintiffs are entitled to a return of Plaintiffs' property (or recovery of monetary damages from Defendants in the equivalent amount of the value

of Plaintiffs' property, in an amount to be determined at trial but believed to exceed $600,000 -- and likely more than $1,000,000), together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs, from Defendant Brezel, the Defendant Green Fund Companies and certain of the Doe Companies 1-5.

124.    Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages in an amount to be determined at trial but believed to exceed $5,000,000.

125.    Based upon the foregoing, and the substantially likelihood that Defendants will continue to engage in the unlawful acts unless they are restrained by a court order from continuing to do so, and Plaintiffs will be irreparably harmed by such continuing unlawful conduct, Plaintiffs are entitled to injunctive relief, enjoining and restraining Defendant Brezel and his alter egos (including the Green Fund Companies), affiliates, successors or assigns, or anyone acting in concert with them, from continuing to unjustly enrich themselves at Plaintiffs' expense.

### FIFTH CLAIM
**(Unfair Competition –**
**Against Brezel, Green Fund Companies, Doe Companies 1-5 and Roe Companies 1-5)**

126.    The Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, as if fully set forth herein.

127.    Defendant Brezel, the Green Fund Companies and certain of the Doe Companies 1-5 and Roe Companies 1-5 have, intentionally and without authority to do so, utilized Plaintiffs' confidential information and work product regarding Plaintiffs' Merchants to solicit those Plaintiffs' Merchants for Subsequent MCA Transactions.

128.    Defendants' conduct included deceptive and wrongful business practices, including (a) allowing Plaintiffs to utilize the "Green Fund" name in their dealings with Plaintiffs'

Merchants and then utilizing the same trade name when approaching Plaintiffs' Merchants for Subsequent MCA Transactions, leading Plaintiffs' Merchants to believe that Plaintiffs were still involved in those transactions, and (b) deceiving Plaintiffs' Merchants by charging unauthorized fees, and thus damaging Plaintiffs' good will.

129.    Plaintiffs have been damaged by the foregoing acts of unfair competition, which include the loss of Plaintiffs' profits from Subsequent MCA Transactions with Plaintiffs' Merchants and Plaintiffs' good will, in in an amount to be determined at trial but believed to exceed $2,000,000.

130.    Based upon the foregoing, Plaintiffs are entitled to a recovery of monetary damages from Defendant Brezel, the Defendant Green Fund Companies and certain of the Doe Companies 1-5 and Roe Companies 1-5, in an amount to be determined at trial but believed to exceed $1,000,000, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs.

131.    Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages in an amount to be determined at trial but believed to exceed $5,000,000.

132.    Based upon the foregoing, and the substantially likelihood that Defendants will continue to engage in the unlawful acts unless they are restrained by a court order from continuing to do so, and Plaintiffs will be irreparably harmed by such continuing unlawful conduct, Plaintiffs are entitled to injunctive relief, enjoining and restraining Defendant Brezel and his alter egos (including the Green Fund Companies), affiliates, successors or assigns, or anyone acting in concert with them, from continuing to unfairly compete with Plaintiffs.

## SIXTH CLAIM
### (Breach of Fiduciary Duty – Against Brezel)

133.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, as if fully set forth herein.

134.    Pursuant to the Brezel Agreement and the joint venture partnership between Plaintiffs and the Brezel Defendants, Brezel was charged with fiduciary duties of loyalty, integrity, honesty and fidelity to Plaintiffs, with heightened standards since Brezel supervised the day-to-day operations for the company.

135.    The fiduciary duty of loyalty commands, inter alia, that Brezel not engage in competing business transactions or any activities that undermine the business or business opportunities of the joint venture with Plaintiffs.

136.    As fiduciary Brezel was also obligated to make full disclosure to Plaintiffs of all material facts affecting the joint venture partnership with Plaintiffs and to safeguard the assets of the and not to engage in high-risk transactions, particularly without full, complete and proper due diligence.

137.    As fiduciary Brezel was also obligated to acts in Plaintiffs' best interests and to manage their shares of the joint venture partnership carefully, to avoid waste and mismanagement, to keep good, accurate records, and to report them accurately to Plaintiffs.

138.    Plaintiffs relied upon Brezel to fulfill his fiduciary obligations to Plaintiffs and to provide dedicated and loyal service consistent with commercial standards of fidelity and honesty.

139.    Brezel violated his fiduciary duties in several material respects, including failing to safeguard Plaintiffs' shares and payments due and owing, failing and refusing to pay to Plaintiffs their proper share of RTR on MCA Transactions and Subsequent MCA Transactions and

29

retaining those and certain other funds that Plaintiffs were entitled to receive under the Brezel Agreement, making material misrepresentations to Plaintiffs about the performance and status of the MCA Transactions and the Subsequent MCA Transactions, by falsifying records, by actively making the Brezel Misrepresentations, by actively concealing his misconduct by presenting fraudulent data, by withholding access to information that was necessary for Plaintiffs to evaluate the value of their share of the MCA Transactions RTR, by improperly charging unreasonable and fake fees against Plaintiffs' accounts, and by exposing the joint venture partnership deals to debilitating losses by involving Braun in the business.

140. Brezel's violations of fiduciary duty have been the direct and proximate cause of substantial financial harm to the Plaintiffs and have exposed them to significant losses of money and good will.

141. By reason of the foregoing, Plaintiffs are entitled to recover monetary damages from Brezel for breach of his fiduciary duties in an amount to be determined at trial following an accounting, but in no event less than $1,000,000 in the aggregate, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs.

142. Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages from Brezel in an amount to be determined at trial but believed to exceed $5,000,000.

143. Based upon the foregoing, and the substantially likelihood that Defendants will continue to engage in the unlawful acts unless they are restrained by a court order from continuing to do so, and Plaintiffs will be irreparably harmed by such continuing unlawful conduct, Plaintiffs are entitled to injunctive relief, enjoining and restraining Defendant Brezel and his alter egos (including the Green Fund Companies), affiliates, successors or assigns, or anyone acting in concert with them, from continuing to violate the fiduciary duties owed to Plaintiffs.

## SEVENTH CLAIM
### (Aiding and Abetting Breach of Fiduciary Duty –
### Against John Does 1-10, Doe Companies 1-5 and Roe Companies 1-5)

144.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92 and 134-140, as if fully set forth herein.

145.    Pursuant to the Brezel Agreement and the joint venture partnership between Plaintiffs and the Brezel Defendants, Brezel was charged with fiduciary duties of loyalty, integrity, honesty and fidelity to Plaintiffs, with heightened standards since Brezel supervised the day-to-day operations for the joint venture partnership set up for the MCA Transactions and maintained the financial records.

146.    As such, Brezel had a relationship of confidence and trust with Plaintiffs, and because of this relationship, Plaintiffs actually reposed confidence and trust in Brezel.

147.    The fiduciary duty of loyalty commands, inter alia, that Brezel not engage in competing business transactions or any activities that undermine the business or business opportunities of the joint venture with Plaintiffs.

148.    As fiduciary Brezel was also obligated to make full disclosure to Plaintiffs of all material facts affecting the joint venture partnership with Plaintiffs and to safeguard the assets and not to engage in high-risk transactions, particularly without full, complete and proper due diligence.

149.    As fiduciary Brezel was also obligated to acts in Plaintiffs' best interests and to manage their shares of the joint venture partnership carefully, to avoid waste and mismanagement, to keep good, accurate records, and to report them accurately to Plaintiffs.

150.     Plaintiffs relied upon Brezel to fulfill his fiduciary obligations to Plaintiffs and to provide dedicated and loyal service consistent with commercial standards of fidelity and honesty.

151.     Brezel violated his fiduciary duties in several material respects, including failing to safeguard Plaintiffs' shares and payments due and owing, failing and refusing to pay to Plaintiffs their proper share of RTR on MCA Transactions and Subsequent MCA Transactions and retaining those and certain other funds that Plaintiffs were entitled to receive under the Brezel Agreement, making material misrepresentations to Plaintiffs about the performance and status of the MCA Transactions and the Subsequent MCA Transactions, by falsifying records, by actively making the Brezel Misrepresentations, by actively concealing his misconduct by presenting fraudulent data, by withholding access to information that was necessary for Plaintiffs to evaluate the value of their share of the MCA Transactions RTR, by improperly charging unreasonable and fake fees against Plaintiffs' accounts, and by exposing the joint venture partnership deals to debilitating losses by involving Braun in the business.

152.     Brezel's violations of fiduciary duty have been the direct and proximate cause of substantial financial harm to the Plaintiffs and have exposed them to significant losses and damages.

153.     Certain of the John Does 1-10, Doe Companies 1-5 and Roe Companies 1-5 knowingly and intentionally helped, participated in and provided substantial assistance to Brezel's breaches of their fiduciary duties by: (i) facilitating the Subsequent MCA Transactions, including, without limitation, acting as a primary contact with Plaintiffs' Merchants and helping to circumvent Plaintiffs in setting up the competing business, providing inflated costs and fees for and phony or inflated invoices to be charged against Plaintiffs' accounts, knowingly and

intentionally entering false information regarding Plaintiffs' Merchants MCA Transactions and Plaintiffs' accounts on the Green Companies' CRM systems and in reports provided to Plaintiffs, and working with Brezel to form the competing business and circumvent Plaintiffs.

154.    The foregoing misconduct by certain of the John Does 1-10, Doe Companies 1-5 and Roe Companies 1-5 in aiding and abetting Brezel's breaches of fiduciary duties has damaged Plaintiffs in the same manner as Brezel's direct breaches of their fiduciary duties, and have been the direct and proximate cause of those damages.

155.    By reason of the foregoing, Plaintiffs are entitled to recover monetary damages from certain of the John Does 1-10, Doe Companies 1-5 and Roe Companies 1-5 for aiding and abetting Brezel's breaches of his fiduciary duties in an amount to be determined at trial following an accounting, but in no event less than $1,000,000 in the aggregate, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs.

156.    Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages from certain of the John Does 1-10, Doe Companies 1-5 and Roe Companies 1-5 in an amount to be determined at trial but believed to exceed $5,000,000.

157.    Based upon the foregoing, and the substantially likelihood that Defendants will continue to engage in the unlawful acts unless they are restrained by a court order from continuing to do so, and Plaintiffs will be irreparably harmed by such continuing unlawful conduct, Plaintiffs are entitled to injunctive relief, enjoining and restraining John Does 1-10, Doe Companies 1-5 and Roe Companies 1-5, and their alter egos, affiliates, successors or assigns, or anyone acting in concert with them, from continuing to aid and abet the breach of fiduciary duties owed to Plaintiffs.

## EIGHTH CLAIM
### (Accounting – Against Defendant Brezel and the Green Fund Companies )

158.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, 134-140 and 145-154, if fully set forth herein.

159.    Pursuant to the Brezel Agreement and the joint venture partnership between Plaintiffs and the Brezel Defendants, Brezel was charged with fiduciary duties of loyalty, integrity, honesty and fidelity to Plaintiffs, with heightened standards since Brezel supervised the day-to-day operations for the joint venture partnership set up for the MCA Transactions and maintained the financial records.

160.    As such, Brezel had a relationship of confidence and trust with Plaintiffs, and because of this relationship, Plaintiffs actually reposed confidence and trust in Brezel.

161.    Plaintiffs maintain that they were and are entitled to an accurate reporting and accounting of all books and records (including original bank statements and invoices), with respect to Plaintiffs' accounts and the MCA Transactions and Subsequent MCA Transactions.

162.    As detailed above, Brezel engaged in wrongdoing against Plaintiffs and has falsified books and records, and has failed and refused to provide Plaintiffs the accounting of all books and records (including original bank statements and invoices), with respect to Plaintiffs' accounts and the MCA Transactions and Subsequent MCA Transactions.

163.    Upon information and belief, many of the relevant books and records and financial reporting with respect to Plaintiffs' accounts and the MCA Transactions and Subsequent MCA Transactions are in the possession of the Green Fund Companies, which Plaintiffs have alleged are alter egos of one another and of Brezel, and thus share the same responsibilities and obligations owed to Plaintiffs.

*T&G v Brezel/GreenFund Complaint 02282023vf*

164.    Accordingly, Plaintiffs respectfully request that this Court order that Defendants Brezel and the Green Fund Companies provide a full and complete accounting to Plaintiffs, including copies of all books and records (including original bank statements and invoices), with respect to Plaintiffs' accounts and the MCA Transactions and Subsequent MCA Transactions together with an award of interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs.

### NINTH CLAIM
**(Tortious Interference with Contract and Business Relations [YW Contract] –
Against Brezel, Green Fund Companies and Doe Companies 1-5)**

165.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, as if fully set forth herein.

166.    Plaintiffs independently established the YW Agreement, which was a valid contract between YW and Plaintiffs, along with a business relationship with YW.

167.    Defendants had express knowledge of the YW Agreement.

168.    Defendants intentionally procured a breach of the YW Agreement by YW, without justification.

169.    Defendants have interfered with Plaintiffs' contract and business relations with YW by, among other things, convincing YW to contract directly with Defendants instead of Plaintiffs and to cease providing Plaintiffs with funding for MCA transactions.

170.    Defendants' interference with the YW Agreement and Plaintiffs' contracts and business relations with YW has caused damage to the relationship between Plaintiffs and YW.

171.    The foregoing misconduct by Defendants has been the direct and proximate cause of significant monetary damages to Plaintiffs.

*T&G v Brezel/GreenFund Complaint 02282023vf*

172.     By reason of the foregoing, Plaintiffs are entitled to recover monetary damages from the Defendants for their interference with the YW Agreement and Plaintiffs' business relations with YW in an amount to be determined at trial following an accounting, but in no event less than $1,000,000 in the aggregate, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs.

173.     Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages from the Defendants in an amount to be determined at trial but believed to exceed $5,000,000.

## TENTH CLAIM
### (Tortious Interference with Business Relations [Plaintiffs' Merchants] – Against All Defendants)

174.     Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, as if fully set forth herein.

175.     Plaintiffs independently established business relationships with each of Plaintiffs' Merchants prior to introducing or referring them to the Brezel Defendants.

176.     Defendants have interfered with Plaintiffs' business relations with Plaintiffs' Merchants by, among other things, providing Plaintiffs' Merchants with all of their subsequent funding needs with Subsequent MCA Transactions that excluded Plaintiffs.

177.     Defendants' interference with Plaintiffs' business relations with Plaintiffs' Merchants have interfered with those relations by, among other things, deceiving the Plaintiffs' Merchants by utilizing the same "Green Fund" name that Plaintiffs utilized when establishing the business relations with Plaintiffs' Merchants.

*T&G v Brezel/GreenFund Complaint 02282023vf*

178.    Defendants' interference with Plaintiffs' business relations with Plaintiffs' Merchants has been accomplished by utilizing improper, wrongful or illegal means that amount to a crime or independent tort, including without limitation, Defendants' deceptive use of the "Green Fund" name with Plaintiffs' Merchants, by breaching or aiding and abetting Brezel's breach of the fiduciary duty owed to Plaintiffs, by engaging in deceptive advertising with respect to the fees that Defendants were going to charge Plaintiffs and then by engaging in illegal acts with respect to the collections from Plaintiffs' Merchants.

179.    Defendants' interference with Plaintiffs' business relations with Plaintiffs' Merchants with those relations by, among other things, deceiving the Plaintiffs' Merchants by utilizing the same "Green Fund" name that Plaintiffs utilized when establishing the business relations with Plaintiffs' Merchants.

180.    Defendants' interference with Plaintiffs' business relations with Plaintiffs' Merchants has caused injury to the relationship between Plaintiffs and the Plaintiffs' Merchants.

181.    The foregoing misconduct by Defendants has been the direct and proximate cause of significant monetary damages to Plaintiffs.

182.    By reason of the foregoing, Plaintiffs are entitled to recover monetary damages from the Defendants for their interference with Plaintiffs' business relations with Plaintiffs' Merchants in an amount to be determined at trial following an accounting, but in no event less than $1,000,000 in the aggregate, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs.

183.    Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages from the Defendants in an amount to be determined at trial but believed to exceed $5,000,000.

*T&G v Brezel/GreenFund Complaint 02282023vf*

184.    Based upon the foregoing, and the substantially likelihood that Defendants will continue to engage in the unlawful acts unless they are restrained by a court order from continuing to do so, and Plaintiffs will be irreparably harmed by such continuing unlawful conduct, Plaintiffs are entitled to injunctive relief, enjoining and restraining Defendants and their alter egos, affiliates, successors or assigns, or anyone acting in concert with them, from continuing to tortiously interfere with Plaintiffs' business relations with Plaintiffs' Merchants.

**ELEVENTH CLAIM**
**(Fraud-Against Brezel and the Green Fund Companies)**

185.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92 as if fully set forth herein.

186.    The Brezel Misrepresentations and the falsification of the records with respect to the Plaintiffs' accounts and the Plaintiffs' Merchants' MCA Transactions, were false statements that Brezel knew to be false when he made the false statements.

187.    Those false statements were made by Brezel in both his individual capacity and on behalf of the Green Fund Companies.

188.    Those false statements were made by Brezel for the express purpose of inducing Plaintiffs to introduce YW and Plaintiffs' Merchants to Brezel and the Green Fund Companies and to procure the Plaintiffs' Merchants' Merchant Agreements in the names of the Green Fund Companies, and to continue to do business with the Brezel Defendants through June of 2021 instead of funding and administering the Plaintiffs' Merchants MCA Transactions themselves or through another funder.

189.    Plaintiffs detrimentally relied upon those false statements by Brezel to their detriment by introducing YW and Plaintiffs' Merchants to Brezel and the Green Fund Companies

and to procuring the Plaintiffs' Merchants' Merchant Agreements in the names of the Green Fund Companies, and continuing to do business with the Brezel Defendants through June of 2021 instead of funding and administering the Plaintiffs' Merchants MCA Transactions themselves or through another funder.

190.    Brezel's false statements and fraud upon Plaintiffs has been the direct and proximate cause of substantial financial harm to the Plaintiffs and have resulted in significant losses of money and good will.

191.    By reason of the foregoing, Plaintiffs are entitled to recover monetary damages from Brezel and the Brezel Defendants for their false statements and fraudulent conduct in an amount to be determined at trial following an accounting, but in no event less than $1,000,000 in the aggregate, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs.

192.    Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages from Brezel and the Brezel Defendants in an amount to be determined at trial but believed to exceed $5,000,000.


### TWELFTH CLAIM
### (Aiding and Abetting Fraud -- Against the Green Fund Companies and John Does 1-10)

193.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92 and 185-190 and as if fully set forth herein.

194.    The Green Fund Companies are included in this claim in the event that the Court finds that they are not individually liable for the fraudulent conduct and false statements made Brezel in the preceding claim.

*T&G v Brezel/GreenFund Complaint 02282023vf*

195.    Upon information and belief, John Does 1-10 (and the Green Fund Companies) knew of the falsity of the false statements and the phony bills, invoices and charges assessed against Plaintiffs' accounts and the false recording of performance and payments and collections under the Plaintiffs' Merchants' MCA Transactions.

196.    Upon information and belief, John Does 1-10 (and the Green Fund Companies) advised on, perpetuated and provided substantial planning and assistance to the commission of the fraud by Brezel (and/or the Green Fund Companies), and personally benefited financially from the fraud.

197.    This wrongful and unlawful conduct was the proximate cause of damages to Plaintiffs, and have resulted in significant losses of money and good will which damages Plaintiffs are entitled to recover from John Does 1-10 (and the Green Fund Companies), jointly and severally.

198.    By reason of the foregoing, Plaintiffs are entitled to recover monetary damages from John Does 1-10 (and the Green Fund Companies), jointly and severally, for their aiding and abetting the fraud perpetrated upon Plaintiffs, in an amount to be determined at trial following an accounting, but in no event less than $1,000,000 in the aggregate, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs.

199.    Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages from John Does 1-10 (and the Green Fund Companies), jointly and severally. in an amount to be determined at trial but believed to exceed $5,000,000.

## THIRTEENTH CLAIM
### (Racketeering/RICO with Wire Fraud-Against All Defendants)

200.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs 1-92, 185-190 and 194-197 as if fully set forth herein.

201.    The Brezel Misrepresentations and the falsification of the records with respect to the Plaintiffs' accounts and the Plaintiffs' Merchants' MCA Transactions, were false statements that Brezel knew to be false when he made the false statements.

202.    Those false statements were made by Brezel in both his individual capacity and on behalf of the Green Fund Companies, and the remaining Defendants in furtherance of their enterprise.

203.    Those false statements and falsified reports with respect to Plaintiffs' accounts and the Plaintiffs' Merchants' MCA Transactions were made by Defendants Brezel and the Green Fund Companies and transmitted by them while they were resident in New York to Plaintiffs in Florida via telephone and email and electronic messaging text messages and wire transfers of fraudulently altered amounts.

204.    Defendant Brezel's and Green Fund Companies' transmittal of the fraudulent materials and false reports via telephone and email and text messages and electronic messaging and wire transfers was part of and in direct furtherance of Defendants' scheme to defraud Plaintiffs out of money or property as described above.

205.    The Defendants are all participants in an ongoing scheme to defraud Plaintiffs and other MCA transaction participants through the use of falsified records regarding fees, charges, and revenues received on MCA transactions in which the participants are due and owed money.

206.    The Defendants all operate together as a unit or enterprise as part of the fraudulent scheme and share the common purpose of engaging in illegal acts and defrauding participants such as Plaintiffs, and have done so for a significant period of time.

207.    Defendants have engaged in at least two predicate acts of wire fraud, in violation of 18 U.S.C. § 1343.

208.    The foregoing constitutes a violation of the Racketeering Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1962 ("RICO").

209.    By reason of the foregoing, and pursuant to 18 U.S.C. § 1964, Plaintiffs are entitled to recover trebled monetary damages from all Defendants in an amount to be determined at trial following an accounting, but in no event less than $3,000,000 in the aggregate, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs.

210.    Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages from all Defendants in an amount to be determined at trial but believed to exceed $5,000,000.

211.    Based upon the foregoing, and the substantially likelihood that Defendants will continue to engage in the unlawful acts unless they are restrained by a court order from continuing to do so, and Plaintiffs will be irreparably harmed by such continuing unlawful conduct, Plaintiffs are entitled to injunctive relief, enjoining and restraining Defendants and their alter egos, affiliates, successors or assigns, or anyone acting in concert with them, from continuing to engage in the ongoing RICO enterprise.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follows:

A. Ordering a complete accounting of the books and records – including all original depository bank account records and original invoices from vendors who costs and fees were charged against the Plaintiffs' accounts -- with respect to the MCA Transactions (including all Subsequent MCA Transactions for Plaintiffs' Merchants) and Plaintiffs' accounts maintained by Brezel and the Green Fund Companies (or their alter egos or successor companies);

B. Awarding Plaintiffs compensatory monetary damages from Defendants in an amount to be determined at trial, but believed to be in excess of at least $600,000 (and likely more than $1,000,000);

C. Awarding Plaintiffs punitive damages from Defendants in an amount to be determined after trial, but believed to be in excess of $5,000,000 dollars;

D. Awarding Plaintiffs statutory damages form Defendants in an amount to be determined at trial, but believed to be in excess of at least $3,000,000;

E. Declaring that: (a) the Plaintiffs and Defendants Brezel and the Green Fund Companies were joint venturers and partners with respect to all MCA Transactions and Subsequent MCA Transactions for Plaintiffs' Merchants; (b) Plaintiffs had a continuing personal and proprietary interest in the relationship with the Plaintiffs' Merchants that they sourced and cultivated for the joint venture, and with respect to the books and records and confidential information with respect to the Plaintiffs' merchants; (c) Defendants had no right to utilize that confidential information after the termination of the joint venture partnership; and (d) Plaintiffs were and are entitled to receive compensation for all Subsequent MCA Transactions with Plaintiffs' Merchants;

F. Ordering that Defendants (and their successor, assigns, alter egos, and others acting in concert with them) are permanently enjoined and restrained from:

    i. Converting the Plaintiffs' property and assets by, *inter alia,* interfering with the Plaintiffs' right to receive the proper share of RTR from all MCA Transactions and Subsequent MCA Transaction with Plaintiffs' Merchants and maintaining dominion and control over Plaintiffs' confidential information regarding Plaintiffs' Merchants;

    ii. Unjustly enriching themselves at Plaintiffs' expense;

    iii. Breaching fiduciary duties owed to Plaintiffs or aiding and abetting such breaches;

    iv. Unfairly competing with Plaintiffs by continuing to fund Plaintiffs' Merchants through Subsequent MCA Transactions without fully compensating Plaintiffs the

*T&G v Brezel/GreenFund Complaint 02282023vf*

profits that Plaintiffs would have made if Plaintiffs had funded the Plaintiffs' Merchants' Subsequent MCA Transactions;

v.     Interfering with the existing contracts and contractual relations that the Plaintiffs have with YW or any of Plaintiffs' funding sources;

vi.    Interfering with the existing contracts and contractual relations that the Plaintiffs have with YW or any of Plaintiffs' funding sources; Merchants; and/or

vii.    Participating in the RICO enterprise with the common purpose of defrauding participants in MCA transactions; *and*

G.    Granting such other relief as this Honorable Court deems just and proper, including interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs in connection with this action.

Dated: Great Neck, New York
       February 28, 2023

Respectfully Submitted:

**MCSHAPIRO LAW GROUP PC**

By:_____.
      Mitchell C. Shapiro (MS-9019)
Three Grace Avenue, Suite 100
Great Neck, New York 11201
(T) 917.446.3628
(F) 646.304.7555
(E) mcs@mcshapirolaw.com

*Attorneys for Plaintiffs*

*T&G v Brezel/GreenFund Complaint 02282023vf*

VERIFICATION

STATE OF FLORIDA        )
                        ) SS:
COUNTY OF DADE          )

ZALMEN TEITELBAUM hereby affirms, deposes and says:

I am one of the individual Plaintiffs in the within action. I have read the within Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe it to be true, under the penalties of perjury.

ZALMEN TEITELBAUM

Affirmed before me this
29 day of February, 2023

Notary Public

Notary Public State of Florida
Tammy M Smith
My Commission HH 315390
Expires 9/22/2026

*T&G v Brezel/GreenFund Complaint 02282023vf*

VERIFICATION

STATE OF FLORIDA      )
                      ) SS:
COUNTY OF DADE        )


SAM GROSS hereby affirms, deposes and says:

I am one of the individual Plaintiffs in the within action. I have read the within Verified

Complaint and know the contents thereof; that the same is true to my own knowledge, except as

to the matters therein stated to be alleged on information and belief, and as to those matters, I

believe it to be true, under the penalties of perjury.


                                                    _____
                                                             SAM GROSS


Affirmed before me this
28 day of February, 2023

_____
Notary Public

Notary Public State of Florida
Tammy M Smith
My Commission  HH 315390
Expires 9/22/2026

*T&G v Brezel/GreenFund Complaint 02282023vf*